IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 36653-7-III |
| DARICE D. GAMACHE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| TODD J. GAMACHE, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Todd Gamache appeals from a dissolution court's entry and

enforcement of a divorce decree. We vacate the court's orders because an arbitration

agreement covered the disputes between the parties that led to the entry and enforcement.

FACTS

Todd and Darice Gamache married on April 11, 1992. During their marriage,

Todd and Darice established Todd Gamache, Inc. Todd Gamache, Inc. owned and

operated six Federal Express delivery routes, and the company hired drivers to handle the

routes on a daily basis. Todd ran the business while Darice raised the parties' children.

Throughout the marriage, Todd Gamache struggled with cocaine and alcohol addiction. Todd maintained sobriety for years but relapsed in April 2015. In addition to drug addictions, Todd also developed a compulsion for gambling. Todd's actions resulted in the couple losing $185,000 in the year leading to the parties' divorce.

PROCEDURE

Darice Gamache filed a petition for divorce on October 3, 2016. That same day, Darice filed a motion for an immediate restraining order asking the court for sole authority to operate Todd Gamache, Inc. and for a restraint against Todd from conducting the finances of the business. The court also bestowed Darice full control of Todd Gamache, Inc., thereby allowing her to "run the parties' business . . . in a fiscally responsible manner." Clerk's Papers (CP) at 425.

On July 17, 2017, Todd and Darice Gamache, both represented by counsel, engaged in mediation with attorney Daniel Smith. As a result of the mediation efforts, the parties entered into a CR 2A agreement. The CR 2A agreement provided that Darice would receive the family home and the parties would sell Todd Gamache, Inc. The parties further agreed to pay numerous debts from the business sale proceeds. The parties anticipated net proceeds from the business's sale of $132,750, and the two allocated the proceeds with Darice receiving $32,750 and Todd receiving $100,000. Above the written agreement's allocation of $32,750 to Darice, someone handwrote 59 percent. Someone

handwrote 41 percent above the $100,000 allocated for Todd. The parties inserted an

arbitration clause into the settlement agreement, which clause read:

> Daniel Smith to serve as arbitrator for any drafting disputes. . . .
> Daniel Smith to serve as arbitrator for any residual issues or conflicts.

Sealed CP at 3.

On October 26, 2017, Darice Gamache filed a motion to enter a dissolution decree

and to enforce the CR 2A agreement because of Todd's failure to draft the orders despite

the agreement directing his attorney to do so. Darice's proposed dissolution of marriage

decree read, in part, on page 5, under the heading "Other orders:"

> All debts incurred by the community shall be paid from the FedEx
> business sale proceeds including the following directly from escrow:
>
> 1) Broker's fee
> 2) $7500 line of credit
> 3) Tax due from sale (25%) if less, to be split between the parties
> 4) Loan for routes (60K)
> 5) The sum of $127,000 to the line of credit on the house
> 6) $33,000 approximately in credit card debts specified below:
>     BECU Visa (approx. amount $7747)
>     Citi Card (approx. $20,444)
>     Discover Card (approx. $6192)
>     *No other credit card debts to be paid
> 7) $25,000 to Tuan
>
> Remaining funds to be held to pay any 2016 tax liability. Any
> liability/fees/costs as a result of a late payment after 9/2017 shall come out
> of the husband's share. After 2016 taxes are resolved, final distributions
> should be made to the husband/wife.
> It is anticipated that after the debts listed 1-7 are paid, that
> approximately $32,750 shall be awarded to the wife, and $100,000 shall be
> awarded to the husband. If less, the amounts shall be reduced pro rata. If

more, the amount shall be split 59% to [Darice] and 41% to [Todd].

CP at 81-82.

On November 1, in response to the motion to enforce the settlement and enter a

dissolution decree, Todd Gamache's counsel averred in a declaration:

> There are issues with the final pleadings and with certain expenses
> that were not disclosed by Ms. Gamache as part of the settlement process.
> Accordingly, pursuant to the CR 2A Agreement the matter is going to have
> to go back to Daniel Smith for arbitration.  That has to take place before
> final papers can be entered.

CP at 52.  In a November 15 declaration, counsel repeated the request to direct the

dispute to arbitration before Daniel Smith.

Todd Gamache objected to Darice's proposed language in the dissolution decree

and contended the language conflicted with the parties' agreement.  Todd filed a

declaration in opposition to the presentation of Darice's proposed pleadings.  Todd

argued that, according to exhibit C of the settlement agreement, he should receive 41

percent of the total community assets and that the proposed dissolution decree language

conflicted with that agreement.  He, in turn, maintained that, with Darice's variant

interpretation of the settlement agreement, the parties never reached a meeting of the

minds, and, therefore, the court should not enforce the CR 2A agreement.  The last

paragraph in Todd Gamache's declaration read:

> Accordingly, I ask the Court to not approve the proposed Final
> Decree [prepared by Darice], since it is not what was contemplated and is
> not fair and equitable, and to order us back to mediation/arbitration to work

out the 60/40 split we agreed to. Pursuant to the terms of our settlement agreement, we agreed to go back to Dan Smith to arbitrate any disputes over the agreement.

CP at 65.

On November 17, 2017, the dissolution court entered findings of fact, conclusions of law, and a decree of dissolution as prepared by Darice.

After November 17, 2017, Darice Gamache learned that, despite Todd representing to the court that funds resulting from the sale of Todd Gamache, Inc. were secure in escrow, Todd had grasped all $305,000 of sale proceeds and deposited the money into his personal bank account. On November 21, 2017, Darice sought an ex parte financial restraining order to freeze Todd's bank accounts. Todd then resided in jail and had not moved any funds from his account.

On November 21, 2017, Darice Gamache also filed a motion to enforce the dissolution decree. On November 30, 2017, Todd Gamache filed a motion and declaration, pursuant to CR 60(b)(1), (9), and (11), for relief from the decree.

On December 8, 2017, the dissolution court heard argument on Darice and Todd Gamache's respective motions. The court orally granted Darice's motion and ordered Todd to place all sales proceeds into the court registry. The trial court found (1) no mutual mistake, (2) a meeting of the minds, (3) no genuine dispute over any material term of the CR 2A agreement, and (4) actual performance. Accordingly, the dissolution

court orally denied Todd's CR 60(b) motion. The court awarded Darice $5,000 in attorney fees.

On January 26, 2018, the dissolution court entered a written order denying Todd Gamache's CR 60(b) motion. In its order on the motion to enforce the final marital dissolution decree, the court directed that $25,000 previously provided to Todd be treated as a property distribution to him. The court further ordered that debts listed in the decree be paid from the deposit in the court registry. The dissolution court ordered that Todd pay $40,000 of the $50,000 he received in December 2017 into the court registry. The court granted the remaining $10,000 to Todd as an additional pre-distribution of assets. In addition, the trial court ordered that the $5,000 in attorney fees awarded to Darice against Todd be paid from the court registry funds and attributed as a distribution to Todd. The court distributed to Darice $32,750 of the deposit and directed that any remaining funds, after payment of bills, be distributed between the parties with Darice receiving 59 percent and Todd receiving 41 percent.

## LAW AND ANALYSIS

Todd Gamache argues that the dissolution court erred in enforcing the settlement agreement because of mutual mistake of the parties and a lack of mutual consent. He also contends that the dissolution court should have referred the pending dispute, concerning the enforceability of the agreement and the meaning of the terms of the agreement, to arbitration. We agree the trial court erred in failing to refer the dispute to

arbitration. Thus, we do not address Todd's other contentions.

On appeal, Darice Gamache asks this court to decline to address Todd's request for referral to arbitration because he did not request arbitration before the dissolution court. We disagree with this factual assumption.

Todd Gamache's counsel, in two declarations preceding the hearing on Darice's motion to enforce the settlement agreement, asked the court to refer the dispute to arbitration. In his declaration opposing the motion to enforce, Todd also requested reference to arbitration. Therefore, we will entertain Todd's assignment of error with regard to arbitration. Darice does not contend that Todd needed to appeal any denial of reference to arbitration within thirty days of the November 17, 2017 order entering the dissolution decree.

Darice Gamache also argues that Todd Gamache needed to bring a formal motion for arbitration in addition to him and his counsel requesting a referral to arbitration in their respective declarations. Darice cites no law to support this contention. We do not consider conclusory arguments unsupported by citation to authority. *Joy v. Department of Labor & Industries*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012). We recognize that generally the party seeking arbitration files a formal motion to refer the dispute to arbitration. Nevertheless, Todd Gamache, although not filing a motion, identified for the dissolution court the existence of the arbitration clause and asked that the dispute be referred to arbitration.

7

The uniform arbitration act stipulates that a "court may not refuse to order arbitration because the claim subject to arbitration lacks merit or grounds for the claim have not been established." RCW 7.04A.070(3). Instead, when determining whether a dispute must be arbitrated, the court must limit its inquiry to the question of whether that dispute falls within the scope of the parties' agreement to arbitrate. *In re Marriage of Pascale*, 173 Wn. App. 836, 838, 295 P.3d 805 (2013). The court must order arbitration, if the arbitration agreement covers the dispute. *In re Marriage of Pascale*, 173 Wn. App. at 838.

Washington strongly favors arbitration. *In re Marriage of Pascale*, 173 Wn. App. at 842; *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 454, 45 P.3d 594 (2002). The court should resolve any doubts regarding the applicability of an arbitration agreement in favor of coverage. *Peninsula School District No. 401 v. Public School Employees of Peninsula*, 130 Wn.2d 401, 413-14, 924 P.2d 13 (1996).

*In re Marriage of Pascale*, 173 Wn. App. 836 informs our decision. The parties to a marital dissolution entered a settlement agreement that read in part: "[a]ny disputes in the drafting of the final documents or any other aspect of this agreement (form or substance), or any issue not discussed shall be submitted to Harry R. Slusher for binding arbitration." *In re Marriage of Pascale*, 173 Wn. App. at 840. When the parties later disputed the interpretation of the settlement agreement, the wife brought a motion to enforce the agreement. The husband moved to refer the dispute to arbitration. The

dissolution court entered a decree of dissolution that confirmed the wife's view of the agreement. The dissolution court concluded that the terms of the settlement agreement were not ambiguous and extrinsic evidence could not be heard to construe the agreement. On appeal, this court reversed and remanded for arbitration. This court concluded that the arbitration clause arguably covered the dispute.

Darice Gamache does not contend that the arbitration provision in her settlement agreement with Todd fails to cover the disputes resolved by the dissolution court. We also conclude that the arbitration clause in the settlement agreement arguably covers those disputes. Therefore, we hold that the dissolution court erred when failing to remand the dispute to arbitration. Other than the portion of the dissolution decree dissolving the parties' marriage, we vacate the dissolution court's November 17, 2017, findings, conclusions, and decree. We also vacate the dissolution court's January 26, 2018 orders.

## CONCLUSION

We reverse the trial court's November 17, 2017, findings, conclusions, and decree. We also vacate the dissolution court's January 26, 2018 order. We remand for an order referring pending disputes between the parties to arbitration.

No. 36653-7-III
*In re Marriage of Gamache*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.